IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JANNA M. HUNTER-CHRONISTER                                        PLAINTIFF


         v.                          CASE NO.        12-2041


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).


### I.  Procedural Background:

The plaintiff filed her applications for DIB and SSI on May 13, 2010, alleging an onset date of May 9, 2010, due to plaintiff's Bi-Polar Disorder, Depression, Anxiety, OCD, and High Blood Pressure (T. 142).  Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on January 11, 2011.  Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 39 years of age and possessed a High School education.  The Plaintiff  had past relevant work ("PRW") experience as a funeral director  (T. 143).

On March 14, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's obesity, headaches, hypertension and mood disorder did not meet or equal any Appendix 1 listing.  T. 14.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work with additional restrictions.  T. 16.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as  machine tender, production worker, and motel maid.  T. 21.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

-2-

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. Step Two:**

The ALJ determined at step two that the Plaintiff's obesity, headaches, hypertension and mood disorder were severe impairments. (T. 14). The Plaintiff first contends that the ALJ should have included her panic disorder with agoraphobia and anxiety as severe.

At step two of the sequential evaluation process, the claimant bears the burden of proving that he has a severe impairment. *Nguyen v. Chater*, 75 F.3d 429, 430-431 (8th Cir. 1996). An impairment or combination of impairments is not severe if there is no more than a minimal effect

on the claimant's ability to work. *See, e.g., Nguyen*, 75 F.3d at 431. A slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities is not a severe impairment. SSR 96-3p, 1996 WL 374181 (1996); SSR 85-28, 1985 WL 56856 (1985).

     Contrary to Plaintiff's argument that she avoids going to public places, the ALJ observed that Plaintiff worked after her alleged onset date of May 9, 2010 (Tr. 19, 34-35, 113, 115, 116). Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005). Further, the evidence does not support a finding that plaintiff suffered from agoraphobia to the degree that it would impact her ability to work as evidenced by plaintiff's continuing to work after her onset date. *Sylvester v. Astrue* 2010 WL 1813778, 17 (W.D.Ark.) (W.D.Ark.,2010). Plaintiff also attended church regularly (Tr. 15, 239) and Bible Study (T. 217).

     The ALJ committed no error in determining that the Plaintiff's anxiety and panic disorder were not severe.

**B. Credibility:**

     The Plaintiff alleged on her Disability Report in May 2010 that her disability affected her Memory, Concentration, Completing Task, Understanding, Following Instructions, and Getting Along with Others. (T. 154). The claimant testified that she could not work five days a week because of anxiety and depression. She said that she felt overwhelmed and that it was difficult for her to get out of bed and get motivated to take a shower or get dressed. The claimant testified that she has trouble visiting people and that she does not go to the grocery store, and she has trouble being in public.

-4-

The ALJ  determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent alleged (Tr. 17).

 "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*,  2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). The ALJ must consider several factors when evaluating a claimant's subjective complaints, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. *(citing Polaski*, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

### 1.  Daily Activities:

The Plaintiff's Daily Function Report showed that she cared for two children, age thirteen and eight (T. 160),  had no difficulty with her personal care (T. 161), she needed no reminders to take her medicine, fixed meals for the family, and did house cleaning and laundry (T. 162). Plaintiff admitted that she drove (T. 163) which included taking her kids to school (T. 164).  Dr. Efird noted that the Plaintiff drove herself to his office in Little Rock for her Mental Diagnostic

Evaluation in July 2010 (T. 237) and acknowledged that she had the ability to drive "unfamiliar routes." (T. 239). The Plaintiff claimed she could not go to public stores (T. 163) but she attended church regularly and spent time with family and friends,(T. 239) . In June 2009 she reported to her treating physician that she was going to church and bible study. (T. 217). The Plaintiff also acknowledged that she maintained a Facebook account which she used daily. (T. 42).

These activities do not support plaintiff's claim of disability. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

## 2. Duration, Frequency, and Intensity

The ALJ noted that the Plaintiff was working at the time of the hearing. It appears that shortly after applying for disability in May 2010 the Plaintiff began to work part time at her old job (T. 128) and was still working there at the time of her hearing. (T. 34-35).

Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir.2005). Further, the evidence does not support a finding that plaintiff suffered from agoraphobia to the degree that it would impact her ability to work as evidenced by plaintiff's continuing to work

-6-

after her onset date. *See Sylvester v. Astrue*  2010 WL 1813778, 17 (W.D.Ark.) (W.D.Ark.,2010).

### 3. Precipitation and Aggravating Factors

The ALJ noted that the Plaintiff was non-compliant with her blood pressure medication and had gained weight even though advised repeatedly to diet and exercise. The records also show that Plaintiff began to smoke in early 2010 and was still smoking at the time of the hearing. (T. 40). Tobacco use, however, was noted as early as 2002. (T. 307).  The Plaintiff acknowledged that smoking made her anxiety worse. (Id.). *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

The ALJ also noted that the Plaintiff failed to get psychological counseling or treatment. The Plaintiff saw Dr. Kralick in November 1998 over the loss of a grandparent but cancelled her appointment with a psychologist and quit taking her abilify in November 2008. (T. 282).  The Plaintiff testified that she cancelled the appointment because she was not able to pay the co-pay. (T. 36). The Plaintiff did not disclose the amount of the co-pay required by the psychologist but, as pointed out above, the Plaintiff subsequently restarted her smoking habit.  *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted); *Cole v. Astrue*  2009 WL 3158209, 6 (W.D.Ark.) (W.D.Ark.,2009). She also had the funds to maintain an internet subscription and television. Her contention that

she could not afford the co-pay for psychological treatment is not credible.

**4. Dosage, effectiveness and side effects of medication**.

As pointed out above the Plaintiff discontinued taking her prescribed Abilify in November 2008. (T. 282). The ALJ also noted that Dr. Edwards reported in October 2010 that the Plaintiff was doing better with Abilify. (T. 335). Subsequent to restarting her Abilify she applied for and was granted "part time" work with her past employer.

**5. Functional Restrictions:**

Prior to his issuance of his Mental Medical Source Statement in August 2010 Dr. Edwards, the Plaintiff's treating physician, had never issued any functional restrictions concerning the Plaintiff's ability to work. In fact, the Plaintiff worked throughout Dr. Edwards' treatment and began working again shortly after he issued his MSS.

The court finds that the ALJ properly discounted the subjective complaints of the Plaintiff.

**C. Residual Functional Capacity**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting

from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

functional capacity is a medical question." *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,*

353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically

a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

### 1.  Failure to develop the record

The Plaintiff next contends that the ALJ failed to properly develop the record in that he

did not require Dr. Efird to provide a Medical Source Statement. (ECF No. 10, p. 11).

Medical source statements are medical opinions submitted by acceptable medical sources,

including treating sources and consultative examiners, about what an individual can still do

despite a severe impairment(s), in particular about an individual's physical or mental abilities to

perform work- related activities on a sustained basis. Adjudicators are generally required to

request that acceptable medical sources provide these statements with their medical reports.

Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527

and 416.927, providing appropriate explanations for accepting or rejecting such opinions.

SSR 96-5, p. 34473.

Dr. Efird met with the Plaintiff on July 20, 2010 but had none of her medical records to

review (T. 236) and diagnosed the Plaintiff with major depressive disorder, moderate and panic

disorder, with agoraphobia (T. 238). Dr. Efird did prepare a report on the "Effects of Identified

Mental Impairments on Adaptive Functioning" (T. 239).  The ALJ did not rely only on the

opinion of Dr. Efird but he obtained a Psychiatric Review Technique from Dr. Brad Williams on

July 22, 2010 (T. 248-261) as well as a Mental RFC which dealt specifically with the Plaintiff's

functional limitations. (T. 244-246).

There is no bright line rule indicating when the Commissioner has or has not adequately

developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v.*

*Shalala,* 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994) The court finds that the ALJ did adequately

develop the record in this instance.

### 2. Treating Physician's Opinion

The Plaintiff next contends that the ALJ "did not treat the opinion of the Plaintiff's

treating physician, Dr. Edwards, appropriately." (ECF No. 10, p. 11).

Dr. Edwards, a family practitioner, had treated the Plaintiff since 1996. (T. 316).  Dr.

Edwards fist prescribed Prozac[2] for the Plaintiff in 1998 (T. 314) and his notes show that she was

seeing a psychologist in November 1998 (T. 211).  In February 1999 her medication was changed

to Zoloft [3]and Dr. Kralick wanted to increase her prescription in March 1999. (T. 310).  The

Plaintiff sees Dr. Edwards consistently until January 2004. (T.  304).  There is then a break in

treatment until March 2007 (T. 302) when she is diagnosed with Manic Depression, obesity,

---

[2]Prozac (fluoxetine) is a selective serotonin reuptake inhibitors (SSRI) antidepressant. Prozac affects chemicals in the brain that may become unbalanced and cause depression, panic, anxiety, or obsessive-compulsive symptoms. Prozac is used to treat major depressive disorder.  See www.drugs.com

[3]Zoloft (sertraline) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). Zoloft affects chemicals in the brain that may become unbalanced and cause depression, panic, anxiety, or obsessive-compulsive symptoms. See www.drugs.com

-10-

fatigue, and hyperglycaemia and is placed on Seroquel.[4] (T. 303). The Plaintiff was seen by Dr. Edwards four times in 2007, seven times in 2008, six times in 2009, six times in 2010, and four times in 2011.

Clearly Dr. Edwards is the Plaintiff's treating physician. Dr. Edwards has seen and treated the patient many times over approximately 17 years. (T. 345). A treating physician's opinion "is entitled to substantial weight 'unless it is unsupported by medically acceptable clinical or diagnostic data.'" Perks, 687 F.3d at 1093-94 (*quoting Kirby v. Sullivan*, 923 F.2d 1323, 1328 (8th Cir. 1991)).

Dr. Edwards provided a Mental Medical Source Statement on August 23, 2010. (T. 342-345). In the Mental MSS Dr. Edwards found that the Plaintiff had Marked Limitations in seven areas and Severe Limitations in two. The consultive examiner, Dr. Williams, found that the Plaintiff had no Marked or Severe Limitations and was only Moderately Limited in seven areas (T. 244-245). We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id; *Cox v. Barnhart*  345 F.3d 606, 610 (C.A.8 (Ark.),2003)

"When one-time consultants dispute a treating physician's opinion, the ALJ must resolve

---

[4]Seroquel (quetiapine) is an antipsychotic medicine. It works by changing the actions of chemicals in the brain. Seroquel is used to treat schizophrenia in adults and children who are at least 13 years old. It is also used to treat bipolar disorder (manic depression) in adults. See www.drugs.com

the conflict between those opinions." *See Wildman v. Astrue* 596 F.3d 959, 969 (C.A.8 (Iowa),2010) citing *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir.2007). Under the Social Security regulations, the amount of weight given to a non-controlling medical opinion is determined by applying the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Owen v. Astrue* 551 F.3d 792, 800 (C.A.8 (Iowa),2008) *citing Wagner*, 499 F.3d at 848.

The reasons the ALJ gave for discounting Dr. Edwards MSS was that he felt Dr. Edwards opinion that the Plaintiff had Marked Limitations in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes (T. 344) was inconsistent with his opinion that she had "no limitations with regard to the ability to maintain socially appropriate behavior and to adhere to basic standards or neatness and cleanliness" and that she was only "moderately in her ability to get along with the general public and had no significant limitations in sustaining an ordinary routine without special supervision" (T. 19).

In addition the record is clear that Dr. Edwards is a general practitioner with a specialty of family practice and no expertise in mental health issues. There was no horizon event noted in the doctor's records that accounts for the Plaintiff becoming totally disabled on May 9, 2010 nor was there any notations that she was having any specific difficulties at work or with co-workers because of her mental impairments. It is also clear that the Plaintiff had worked for many years

-12-

with her mental condition and she continued to work at her place of employment on a part time

basis (16 hours per week at $11/hour) after she had filed for disability.(T. 34-35).

The ALJ noted that in November 2008 the Plaintiff stopped taking her Abilify and

cancelled an appointment she had with a psychologist. (T. 282). An ALJ may properly consider

the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253

F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins,* 177

F.3d at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit

smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997); *Choate v. Barnhart* 457 F.3d

865, 872 (C.A.8 (Mo.),2006).  The ALJ also noted that Dr. Edwards reported in October 2010

that the Plaintiff was doing better with Abilify. (T. 335).  It was during this time that the Plaintiff

evidently went back to work because the records for SCI Arkansas Funeral Services reflects that

she was rehired on October 9, 2010. (T. 128).  According to the Plaintiff's testimony this was

only for part time work of 16 hours per week but regardless it appears the medication was

effective. Impairments that can be controlled effectively with medication are not disabling for the

purpose of determining eligibility for benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540

(8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707

F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's

impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.*  439

F.3d 1001, 1006 (C.A.9 (Or.),2006).

When one-time consultants dispute a treating physician's opinion, the ALJ must resolve

the conflict between those opinions when reviewing a claimant's applications for social security

disability insurance benefits (DIB) and supplemental security income benefits (SSI). *Wildman v.*

-13-

*Astrue*  596 F.3d 959 (C.A.8 (Iowa),2010).  It is a difficult decision to discount a treating physician's opinion, and the court's function is not to look at the matter in the light of whether the court would have decided the issue differently, but whether the ALJ's rational and the record support the ALJ's decision.  The court in this instance believes the rational and record do support the ALJ's decision. The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *Hibshman v. Astrue*  2012 WL 1158707, 3 (E.D.Ark.) (E.D.Ark.,2012).  The court finds that the ALJ properly assessed the Plaintiff's RFC.

**D.  Vocational Expert Testimony**

Testimony from a vocational expert ("VE") based on a properly-phrased hypothetical question constitutes substantial evidence.  *See Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996); cf. *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994) (when hypothetical question does not encompass all relevant impairments, VE's testimony does not constitute substantial evidence to support the ALJ's decision). The ALJ's hypothetical question needs to "include only those impairments that the ALJ finds are substantially supported by the record as a whole." Id. (citing *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993)); see also *Morse v. Shalala*, 32 F.3d 1228, 1230 (8th Cir.1994). A hypothetical need not use specific diagnostic or symptomatic terms where other descriptive terms can adequately define the claimant's impairments.  *Roe v. Chater*, 92 f.3d 672, 676 (8th Cir. 1996).

The ALJ's hypothetical question to the VE was properly phrased and contained all of the limitations he found to be credible.

**IV.  Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this February 22, 2013.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE